IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORIS C. BECK | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-4652 |
| | : | |
| WELLS FARGO BANK, N.A. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **August 19, 2011**

Plaintiff Doris C. Beck brings claims arising from her attempted rescission of a mortgage-backed loan pursuant to the Truth in Lending Act (TILA), 15 U.S.C. § 1635, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, against Defendant Wells Fargo Bank (Wells Fargo) and two law firms which represented Wells Fargo, McCabe, Weisberg & Conway, P.C. (McCabe) and Stevens & Lee, P.C. (Stevens).

Defendants each filed separate motions to dismiss, arguing, *inter alia*, that their attempts to challenge Beck's purported rescission of her loan and foreclose on her property due to Beck's nonpayment cannot constitute violations of the FDCPA, FCEUA, or UTPCPL because a notice of rescission is not self-effectuating. Wells Fargo also asserts that Beck's TILA claim for damages is barred by the one-year statute of limitations, and that this Court should abstain from deciding whether Beck may rescind her loan while the state court hearing the foreclosure action decides whether Beck may successfully raise rescission as a defense. For the following reasons, the

1

Defendants' motions to dismiss will be granted.

**FACTS**

On January 4, 2008, non-party Max Martinez and/or Beck entered into a loan agreement with Wells Fargo,[1] through which Wells Fargo obtained a security interest in Beck's home at 152 East Cheltenham Avenue, Philadelphia, Pennsylvania (the Property). The loan proceeds of $81,000 were sent to Martinez.[2] In December 2008, payments on the loan ceased, and sometime thereafter it went into default.

On August 3, 2009, Wells Fargo, represented by McCabe, initiated foreclosure proceedings against the Property in Pennsylvania state court. On January 5, 2010, Beck's counsel sent Wells Fargo and McCabe a notice of rescission of the loan via certified mail, pursuant to the TILA, 15 U.S.C. § 1635. Am. Compl. Ex. 4. The notice stated that Wells Fargo's security interest had become "void upon this rescission" and that, accordingly, Wells Fargo was required to "return to [Beck] all monies paid and to take action necessary or appropriate to reflect termination of the security interest." *Id.* at 1.

On January 25, 2010, Stevens entered an appearance for Wells Fargo in the state foreclosure proceeding and sent a letter to Beck's counsel acknowledging Wells Fargo had received the notice of rescission, but disputing the validity of such rescission. The same day, Beck's counsel sent a letter to inform Wells Fargo that because Beck was not the borrower and Wells Fargo "did not deliver any money or property to her," she was not obligated to tender "any money or property" to

[1] The loan agreement was made with Wachovia Bank, which was purchased by Wells Fargo at the end of 2008. Because it is undisputed that Wells Fargo is the successor-in-interest to Wachovia, this Court will refer to the Defendant in this action as Wells Fargo.

[2] Martinez's relationship to Beck is unclear from the record.

Wells Fargo. Am. Compl. Ex. 9. Wells Fargo did not return any funds to Beck, as would have been required by 15 U.S.C. § 1635(b) had there been a valid rescission. Stevens also continued to prosecute the foreclosure action, filing preliminary objections three days later. On February 17, 2010, Wells Fargo sent Beck's counsel a letter requesting additional information about the loan. On August 6, 2010, McCabe served Beck with a request for admissions. Wells Fargo and McCabe also continued to request payment from Beck. On August 30, 2010, McCabe sent Beck's counsel a letter containing a payoff figure of $58,256.38 to satisfy Beck's loan.

Beck filed the instant action on September 14, 2010, and filed an Amended Complaint on November 1, 2010.[3] Beck brings a TILA claim against Wells Fargo for failing to honor her notice of rescission, FDCPA claims against all Defendants, and FCEUA and UTPCPL claims against Wells Fargo and McCabe.[4] Defendants thereafter filed separate motions to dismiss.

## DISCUSSION

When considering a motion to dismiss, courts must accept the plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation" such that the right to relief is more than speculative. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

---

[3] The facts contained herein are derived from the Amended Complaint.

[4] Because Beck's FCEUA and UTPCPL claims are based upon Defendants' allegedly wrongful debt collection activity, these claims shall be addressed with Beck's FDCPA claim.

Beck alleges Defendants violated the FDCPA by trying to collect a debt while (1) engaging in conduct "the natural consequence of which [was] to harass, oppress, or abuse" Beck, in violation of 15 U.S.C. § 1692d; (2) using "false, deceptive, or misleading representation[s] or means," in violation of § 1692e; and (3) using "unfair or unconscionable means," in violation of § 1692f. Defendants argue their efforts to challenge Beck's right to rescind the loan and prosecute a foreclosure action against Beck despite receiving a rescission letter from Beck's counsel does not violate the FDCPA because such actions were not abusive, deceptive, unconscionable, or wrongful in any other way.

To determine whether Beck adequately alleges an FDCPA violation, it is helpful to first determine whether Beck validly "rescinded" her loan through her counsel's January 5, 2010, letter.

Under the TILA, an obligor has a right to rescind a loan for three days after the loan transaction is finalized. 15 U.S.C. § 1635(a). If a creditor fails to make material disclosures, including disclosure of the right to rescind, the consumer's ability to rescind is extended for up to three years. *Id.* The TILA does not describe in detail the procedure for challenging a notiec of rescission, merely stating that "the obligor shall have the right to rescind the transaction . . . by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so." 15 U.S.C. § 1635(a). Regulation Z, the regulation promulgated to implement the TILA, provides an obligor may "exercise the right to rescind [by] notify[ing] the creditor of the rescission by mail, telegram, or other means of written communication." 12 C.F.R. § 226.23(a)(2). The statute also requires that "within 20 days after the receipt of a notice of rescission, the creditor shall return to the obligor any money or property given . . . and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b).

4

Similarly, Regulation Z states that "[w]ithin 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23.

Because the TILA states an obligor's right to rescind is exercised by notifying his creditor of his intent to rescind, Beck asserts the loan agreement became void at the moment her counsel notified Wells Fargo of her intent to rescind. The Third Circuit has not addressed the legal effect of a rescission notice on the status of a loan, and there is some case law to support the argument that a loan is rescinded as soon as a debtor sends a notice of intent to rescind, even when such notice is sent beyond the three-day period in which rescission does not require a disclosure defect. *See Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1141-42 (11th Cir. 1992) (holding rescission is automatic upon notification, but stating a judge may condition the voiding of a security interest on the debtor's tender of the remaining balance of the loan); *In re Hunter*, 400 B.R. 651, 659-60 (Bankr. N.D. Ill. 2009) ("[The TILA] clearly states that rescission is accomplished 'by notifying the creditor . . . of his intention to do so."); *Velazquez v. HomeAmerican Credit, Inc.*, 254 F. Supp. 2d 1043, 1046 (N.D. Ill. 2003) (stating the TILA "requires a creditor to take certain steps once a consumer elects to rescind the transaction" and effectuates his decision to rescind by sending a notice).

Despite these cases, the weight of authority is that a loan agreement is not voided immediately upon an obligor's notification that she intends to rescind, particularly when such notice is sent more than three days after the transaction has been finalized. *See Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) ("This Court adopts the majority view of reviewing

courts that unilateral notification of cancellation does not automatically void the loan contract.");

*Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003) (holding rescission was not

automatic upon notice by the obligor because "[o]therwise, a borrower could get out from under a

secured loan simply by claiming TILA violations, whether or not the lender had actually committed

any"); *Thompson v. Irwin Home Equity Corp.*, 300 F.3d 88, 90 (1st   Cir. 2002) ("[Case law]

forecloses the [obligors'] claim that their demand for rescission had the automatic effect of

invalidating the loan agreement."); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st

Cir. 2002) ("The natural reading of [§ 1635(b)] is that the security interest becomes void when the

obligor exercises a right to rescind that is available in the particular case, either because the creditor

acknowledges that the right of rescission is available, or because the appropriate decision maker has

so determined. . . . Until such decision is made, the [obligors] have only advanced a claim seeking

rescission."); *Bertram v. Beneficial Consumer Discount Co.*, 286 F. Supp. 2d 453, 459 (M.D. Pa.

2003) ("The [rescission] notice is merely procedural . . . . Until the creditor honors the notice, or a

court certifies its validity, it is without legal effect."). This interpretation is bolstered by the fact that,

in response to confusion among courts as to whether judges were allowed to modify TILA's

rescission process, Congress revised § 1635(b) in 1980. The amendment to § 1635(b) explicitly

referenced the possibility of judicial intervention in the rescission process by adding the phrase,

"[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a

court." *See* Truth in Lending Simplification and Reform Act, Pub. L. No. 96-221, tit. VI, §

612(a)(4), 94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. § 1635(b)).

If, as Beck contends, rescission became effective at the moment her counsel gave notice of

her intent to rescind, there would be no opportunity for a creditor to seek a judicial determination

6

of what procedures following receipt of a notice of an intent to rescind are appropriate, as contemplated by the amendment to § 1635(b). Moreover, Wells Fargo clearly disputed Beck's right to rescission in its letter of January 25, 2010. Am. Compl. Ex. 9 ("Please be advised that Wells Fargo disputes your client's right to rescind the Loan."). After additional correspondence between the parties both outside of court and in the context of the state foreclosure proceeding, Beck elected to file the instant suit, in part seeking to validate her rescission. Neither this Court, nor the state court, has issued a judicial determination regarding whether Beck is entitled to the remedy of rescission under the TILA.[5] Consistent with the weight of authority, this Court finds that Beck's notice of rescission did not have the effect of automatically voiding the loan agreement and triggering the procedural mechanisms of 15 U.S.C. § 1635(b).

Having found the loan was not automatically rescinded and Wells Fargo therefore retained a valid mortgage against the Property, this Court must decide whether Defendants' subsequent actions in sending letters requesting payment and prosecuting the state foreclosure action violated the FDCPA or the related Pennsylvania statutes. In sum, Beck alleges McCabe violated these statutes by filing a state foreclosure proceeding on behalf of Wells Fargo, failing to tell Wells Fargo to rescind the loan and continuing to prosecute the foreclosure action after receiving a copy of Beck's purported rescission, and sending requests for admissions which contained a false statement that default judgment may be entered for failure to respond. Similarly, Beck claims Stevens is liable for its failure to advise Wells Fargo to honor her rescission notice, correspondence with Beck's counsel challenging Beck's right to rescind, and continued prosecution of the foreclosure action by entering

---

[5] It is not necessary to decide whether Beck had the right to rescind based on Wells Fargo's purported non-disclosure of material terms because this Court declines to reach the merits of Beck's TILA claim for the reasons stated below.

an appearance as co-counsel for Wells Fargo and filing preliminary objections in that litigation. Beck's claims against Wells Fargo appear to derive from these same actions by its counsel.

Although this Court recognizes attorneys may be liable under the FDCPA and that no litigation privilege exists for FDCPA claims, *see Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011) ("Common law immunities cannot trump the FDCPA's clear application to the litigating activities of attorneys." (internal punctuation and citation omitted)), Beck's Amended Complaint alleges Defendants engaged in nothing more than routine litigation and negotiations to obtain the amount due on a mortgage-backed loan. There is nothing in the Amended Complaint to form a plausible basis to believe Defendants engaged in any of the actions proscribed by the FDCPA, FCEUA, or UTPCPL. Indeed, the language of the FDCPA suggests that, even if Beck's rescission notice did immediately void the loan, the institution of legal proceedings to challenge this rescission does not lead to liability under the FDCPA. *See* 15 U.S.C. § 1692f(6)(A) (forbidding a debt collector from "[t]aking or threatening to take any *nonjudicial* action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest" (emphasis added)). To allow liability under these circumstances would effectively preclude all creditors from challenging the validity of an obligor's notice of rescission without incurring liability under the FDCPA, a result which Congress could not have intended. Accordingly, the FDCPA, FCEUA, and UTPCPL claims against Defendants are dismissed.[6]

The sole remaining claim is Beck's TILA claim against Wells Fargo, for which Beck seeks

---

[6] Stevens also filed a motion for sanctions based on Beck's pursuit of her FDCPA claim against it. While such claim is non-meritorious, Beck's actions do not amount to conduct warranting sanctions under Federal Rule of Civil Procedure 11. Stevens's motion for sanctions is therefore denied.

both rescission of the loan and damages. Wells Fargo asserts Beck's damages claim is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1640(e), which requires a claim for damages under the TILA must be brought "within one year from the date of the occurrence of the violation." Beck asserts Defendants' post-notice activities constitute a violation of the TILA, and that the statute of limitations therefore runs from Beck's notice of her intent to rescind. Wells Fargo argues the statute of limitations for TILA damages claims instead runs from the date of the loan transaction. Because Wells Fargo's actions contesting the validity of Beck's notice were proper and did not violate the TILA, which does not describe the proper procedure for challenging a notice of rescission, Beck's argument is without merit. Instead, if Wells Fargo violated TILA by failing to make proper disclosures at the time of the parties' mortgage transaction, the statute of limitations for Beck's TILA claims began to run on January 4, 2008, the date the transaction was finalized. Beck's claim for damages under the TILA, which was filed in September 2010, is thus time-barred under 15 U.S.C. § 1640(e). Beck's claim for rescission under § 1635, however, is not time-barred because § 1635f creates a three-year period in which to seek rescission. *Id.* § 1635f ("[An] obligor's right of rescission shall expire three years after the date of consummation of the transaction."). Beck's TILA claim will thus be dismissed as untimely pursuant to 15 U.S.C. § 1640(e) only insofar as she seeks damages.

With regard to Beck's sole remaining claim for rescission under the TILA, Wells Fargo argues this Court should abstain from hearing such claim because of the pendency of a foreclosure action against Beck in Pennsylvania state court. Federal courts have a "virtually unflagging obligation" to exercise jurisdiction, absent extraordinary circumstances. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988). A federal court may abstain from exercising otherwise proper jurisdiction,

however, to avoid deciding issues that would interfere with an ongoing proceeding in a state court. *Younger v. Harris*, 401 U.S. 37 (1971); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (stating a court may abstain from hearing a damages action until related state court proceedings have concluded). Abstention is warranted when (1) there are ongoing state judicial proceedings (2) which implicate important state interests and (3) afford an adequate opportunity for the litigants to raise the federal claims. *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010).

All of the abstention factors are satisfied here. Wells Fargo began state foreclosure proceedings on August 3, 2009, more than a year before Beck filed the instant action. The state has an important interest in resolving disputes related to real property located within its jurisdiction, as such disputes implicate matters primarily governed by state law. *See Quackenbush*, 517 U.S. at 728 (explaining that states have an interest in resolving local problems and retaining control over questions of state law, which must be balanced against federal courts' interest in enforcing their jurisdiction). And, while Beck's rescission claim arises under a federal statute, she has already raised her claim for rescission in the state court proceeding as a defense to foreclosure. *See* Wells Fargo's Mot. to Dismiss Ex. A (Beck's Answer to Pl.'s Amended Complaint). The state proceeding thus affords Beck an adequate opportunity to raise her TILA claim for rescission. Moreover, this Court's failure to abstain would unduly interfere with the state court's ability to manage the mortgage foreclosure action, a proceeding which "traditionally is handled in state court." *Nat'l City Mortgage Co. v. Stephen*, 09-1731, 2011 WL 2937275, at *7 (3d Cir. July 22, 2011). This Court will therefore abstain from hearing Beck's TILA rescission claim. Because this claim seeks an equitable

remedy, not damages, this matter need not be stayed and dismissal of this claim is warranted.[7] *See*

*Deakins*, 484 U.S. at 201-02 (upholding the dismissal of equitable claims but finding a district court

must stay claims for monetary relief which cannot be redressed in the ongoing state proceeding).

Defendants' motions to dismiss are therefore granted.

An appropriate order follows.

BY THE COURT:

Juan R. Sánchez, J.

_____

[7] The dismissal of Beck's TILA rescission claim shall be without prejudice, although this Court notes that the application of preclusion doctrines would generally prevent a litigant from challenging the result of a state foreclosure action through a lawsuit in federal court.

11